UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
MANUEL ALEJANDRO CALDERON,

        Petitioner,

        -against-

UNITED STATES OF AMERICA,

        Respondent.
----------------------------------------------------X

MEMORANDUM AND ORDER

10-CV-1527

(Wexler, J.)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 27 2013 ★
LONG ISLAND OFFICE

APPEARANCES:

    MANUEL ALEJANDRO CALDERON
    Petitioner, *pro se*
    DC# M63068
    Gulf Correctional Institution
    Main Unit
    500 Ike Steele Road
    Wewahitchka, FL 32465

    LORETTA E. LYNCH, ESQ., UNITED STATES ATTORNEY
    BY: THOMAS SULLIVAN, ESQ., ASSISTANT UNITED STATES ATTORNEY
    Eastern District of New York
    Attorneys for Respondent
    610 Federal Plaza
    Central Islip, New York 11722

WEXLER, District Judge

    On October 26, 1993, petitioner Manuel Alejandro Calderon ("Calderon" or "Petitioner"), a permanent legal resident of the United States and native of Columbia, pled guilty before this court to conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846 & § 841(b)(1)(c). After providing cooperation that resulted in the conviction of his co-defendant, he was sentenced to time served and three years of probation on June 23, 1995. He was released from probation without incident on June 22, 1998. Years later, on December 6, 2005, he

received a Notice to Appear ("NOA") from the Immigration and Naturalization Service ("INS"). As outlined below, his attempts to receive a waiver of removal were unsuccessful. He now brings this petition for a writ of error coram nobis under 28 U.S.C. § 1651(a) to vacate his conviction and sentence, claiming that his Sixth Amendment right to effective counsel was violated when his counsel advised him that he would not be deported for pleading guilty to conspiracy to distribute cocaine. For the reasons outlined below, petitioner's motion is denied.

BACKGROUND

I.   The Criminal Charge

On May 5, 1993, Calderon was arrested after retrieving, with two other men, a package containing 5,754 grams of cocaine[1] from Airborne Express in Ronkonkoma, as they attempted to return to New Jersey. Calderon was not the addressee or owner of the package, and stated that he served as a translator and to helped navigate the location for the retrieval. He was to be paid $2,000, which he never received. Following his arrest, he was held without bail.

Several months later, the Government offered Calderon a plea agreement if he cooperated. Calderon claims that his attorney, Emanuel A. Moore ("Moore") advised him that he would not do well at a jury trial due to the nature of the drug charges and that he was from Columbia. Calderon was very concerned about whether he would be deported since much of his family was in the United States, including a young son, and that his life would be in danger if he was sent back Columbia. Calderon claims Moore assured him that he would receive a sentence

---

[1] United States Customs inspectors discovered the package while it as en route from Columbia to New York, and Drug Enforcement Agents substituted the 5,754 grams of cocaine with a sham substance, left it for retrieval at Airborne Express in Ronkonkoma, New York, and observed the Petitioner and his co-defendants retrieve the package.

2

less than 5 years, and since he had committed only one felony, and had been a legal permanent resident for over seven years, he would not be deported. Based on this advice, Calderon plead guilty on October 26, 1993 and agreed to cooperate.

Calderon cooperated and provided important testimony that resulted in the conviction of his co-defendant and "owner" of the package. He received a Section 5K1.1 letter from the Government and on June 23, 1995, he was sentenced to time served followed by three years supervised release. Since he had already been detained for two years in pre-trial detention, he was immediately released. Following his release, Calderon held a steady job, supported his son, went to school at night and satisfied all of his supervised release obligations. On June 22, 1998, his term of supervised release ended.

II. The Immigration Case

Several years later, on December 6, 2005, Calderon received a Notice to Appear from INS, initiating removal proceedings based on his conviction of an aggravated felony and an offense relating to a controlled substance. Calerdon enlisted a immigration attorney, and sought a waiver of removal under Section § 212(a). His family paid for a bond, permitting his release from Immigrations and Customs Enforcement ("ICE") custody on February 2006.

On November 2, 2006, Calerdon had a hearing before an Immigration Judge ("IJ") in Newark, NJ, and his motion for a waiver of deportation was denied. He appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's decision.[2] Calerdon appealed to the Third

---

[2] The BIA noted that the IJ failed to find that there were "unusual or outstanding equities" to overcome Calderon's criminal history in the United States. The IJ noted that Calderon had been incarcerated for more than half of his time in the United States - including over 5 1/2 years for a first degree murder charge for which he was later acquitted. The BIA found that the IJ considered all the equities and committed no error in finding them insufficient to overcome

3

Circuit, which affirmed, finding that the IJ could consider Calderon's pre-trial detention time, including that for the murder charge, in determining whether Calderon a waiver of removal was warranted. See Calderon v. Attorney General of the United States, 2009 WL 274146 (3d Cir. 2009). A petition for a writ of certiorari before the United States Supreme Court was denied on October 5, 2009.

III. The Present Application

Calderon brings this petition for a writ of error coram nobis, seeking to vacate his conviction and sentence. Having exhausted all remedies available to him to obtain a waiver of removal in his immigration action, he brings this action, claiming the only way to avoid deportation is to vacate his federal conviction and sentence. Specifically, Calderon claims that his attorney Moore gave him incorrect advice when he said that Calderon would not be deported if he pled guilty, and that he would not have taken the plea if deportation was a possibility. Since Moore's advice proved to be wrong, Calderon claims his Sixth Amendment right to the effective assistance of counsel was violated which warrants a vacatur of his conviction. Calderon also moves for appointment of counsel and that the Court schedule oral argument.

DISCUSSION

I. Legal Principles

The All Writs Act, 28 U.S.C. § 1651(a), provides that all courts established by an Act of Congress may issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The writ of coram nobis is essentially a remedy of last resort for petitioners who are no longer in custody and therefore cannot pursue direct

---

Calderon's drug conviction and incarceration for the murder charge.

4

review or collateral relief by means of a writ of habeas corpus, yet continue to suffer legal consequences of their conviction. Fleming v. U.S., 146 F.3d 88, 89-90 (2d Cir. 1998). It is available only in extraordinary circumstances, where such a fundamental error has occurred that renders the proceedings irregular and invalid. Nicks v. United States, 955 F.2d 161, 166-167 (2d Cir. 1992). Such relief may be appropriate when: 1) there are circumstances compelling such action to achieve justice; 2) sound reasons exist for failure to seek appropriate relief earlier; 3) the petitioner continues to suffer legal consequences that may be remedied by the granting of the writ. Fleming v. United States, 146 F.3d 88, 90 (2d Cir. 1995) (citations omitted).

Calderon argues he was denied effective assistance of counsel when his attorney advised him he would not be deported if he pled guilty. He claims circumstances compel a writ of coram nobis since he fully served his sentence and yet continues to be subject to deportation because he took a plea he would not have taken had his attorney correctly advised him that his plea could result in deportation. He never asked for the relief earlier because he did not know he might be subjected to removal proceedings until they were initiated, and now that he is, legal consequences continue. Thus, this ineffective assistance of counsel in violation of his Sixth Amendment rights warrants granting the writ.

II.   Disposition of the Petition

Calderon claims that he only took the plea because his attorney assured him that no deportation would result. As described above, Calderon was advised that since he had no prior felonies, and he would be sentenced to less than five years, he would not be deported. As a permanent legal resident for several years, with various family members in the United States including a young son, Calderon claims this was of the utmost importance to him. Thus, having

5

been reassured that deportation would not occur, Calderon plead guilty to conspiracy to distribute cocaine.

Calderon argues that the ineffective assistance of counsel he received constitutes "compelling circumstances" that warrant a writ of coram nobis. It is well-settled that to prevail of a claim of the ineffective assistance of counsel, the petitioner must show that (1) the counsel's performance fell below an objective standard of reasonableness; and (2) there was reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Zandi v. United States, 460 Fed. Appx. 51, 52 (2d Cir. 2012), quoting Strickland v. Washington, 466 U.S. 668, 687-688 (1984). See also Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011) (quotations omitted). In explaining what constitutes deficient performance by counsel, the U.S. Supreme Court has advised that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.

1. Counsel acted below an objective standard of reasonableness

In 2010, the Supreme Court addressed the issue of whether an attorney's advice concerning a plea that could result in deportation was a Sixth Amendment violation. In Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 1483 (2010), the Court stated that when the terms of a relevant immigration are "succinct, clear, and explicit," it is incumbent on the attorney to convey that advice, or commit a constitutional deficiency that satisfies the first prong of Strickland.

6

The immigration deportation statute at issue in Padilla, 8 U.S.C. § 1227, explicitly states that any alien convicted of a violation, including conspiracy, relating to a controlled substance, is deportable.³ The Supreme Court noted that in 1996, Congress eliminated the Attorney General's authority to grant discretionary relief from deportation, meaning that "if a noncitizen has committed a removable offense after the 1996 effective date of these amendments, his removal is practically inevitable..." Padilla, 130 S.C.t at 1480. The Court continued to note that "[t]hese changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction." Id. In that case, because Padilla's attorney did not advise him that his plea would subject him to deportation, the Court found that he suffered from the ineffective assistance of counsel, and the first prong of the Strickland test was satisfied. Id., at 1483.

Here, although the statutory language is similar, as the Supreme Court noted, the elimination of the Attorney General's discretion in 1996 – three years after Calderon's plea – is what makes the language of the statute now "succinct, clear, and explicit." Furthermore, the mandate of Padilla does not apply retroactively to Calderon. See Hamad v. United States, 2011 WL 1626530, *2 (E.D.N.Y. 2011); Alshalabi v. United States, 2012 WL 3779226, *1 (E.D.N.Y. 2012).

Calderon cannot show that Moore's performance fell below an objective standard of reasonableness. It is true, and extremely unfortunate, that twelve years later, in 2005, INS instituted removal proceedings against Calderon, proving Moore wrong. Yet, what is relevant to the inquiry here is the immigration deportation law as it was at the time of Calderon's plea. In

---

3The analogous statute in effect at the time of Calderon's plea in 1993 was 8 U.S.C. §1251(a)(2)(B)(i) (1993), and contains language similar to 8 U.S.C. § 1227(a)(2)(B)(i).

7

light of the discretionary authority regarding deportations at the time of his plea, Calderon is unable to show that Moore's advice was outside reasonable professional norms, or results from "such as a deficient investigation, a legal error, or a complete failure to render advice." See Lake v. United States, 2012 WL 695433, **2 (2d Cir. 2012) (citations omitted).

Furthermore, there is evidence that despite what Moore may have advised him, Calderon was told at his plea hearing that deportation was a possibility. The plea transcript indicates Calderon was informed by the Assistant U.S. Attorney that deportation was one of the possible penalties for pleading guilty:

> AUSA Burns: So the record is clear, additional penalties are possible - not restitution, just deportation is a possibility. Just so he knows.
>
> Defendant Calderon: I'm aware of that.
>
> AUSA Burns: Possible deportation for a drug offense.
>
> The Court: Are you ready to plead?
>
> Defendant Calderon: Yes, your Honor.

Thus, Calderon proceeded to plead guilty. See Memorandum of Law in Opposition, Exhibit 3: Plea Transcript, at 10.

### 2. Prejudice - But for counsel's performance, the proceedings would have been different

Even if Calderon could prove that Moore provided ineffective assistance of counsel, he is unable to the second prong of the Strickland test – that the proceedings would have been different but for the attorney's incorrect advice. First, Calderon fails to provide any evidence that "but for" Moore's advice, he would have proceeded to trial, other than his own self-serving statements, which are insufficient. See Scott v. Superintendent, Mid-Orange Correction Facility,

8

2006 WL 3095760, *9 (E.D.N.Y. 2006) ("[p]ut simply, conclusory allegations that a defendant would have insisted on proceeding to trial are generally insufficient to establish actual prejudice under Strickland"). Secondly, there is no indication that the proceedings would have been different -- meaning there would be no removal proceedings -- but for the attorneys' advice. In lieu of pleading guilty, Calderon would have gone to trial, and if convicted, might well have faced removal proceedings earlier. Also, review of the immigration proceedings indicates that the IJ considered Calderon's 5½ years of incarceration for a murder charge, which is wholly unrelated to this drug conviction, and found those facts significant when denying his Section 212(a) waiver of removal motion. Thus, Calderon has failed to show that but for Moore's advice, the removal proceedings would have been different. Therefore, having failed to satisfy the prejudice prong, Calderon's claim that Moore provided ineffective assistance of counsel fails.

In reviewing the elements required for the writ of coram nobis, the Court finds that sound reasons exist for Calderon's failure to seek appropriate relief earlier since he did not face deportation earlier, and that he continues to suffer legal consequences as long as he continues to face deportation. Yet, his claim that he received the ineffective assistance of counsel is not valid, and therefore there are no circumstances that compel the writ to achieve justice. Thus, the petition for a writ of coram nobis is hereby denied.

## CONCLUSION

For the foregoing reasons, the petitioner's request for a petition for writ of coram nobis is denied, as is his motion for appointment of counsel and oral argument. The Clerk of the Court is directed to close the file in this case.

SO ORDERED.

/s/ LEONARD D. WEXLER
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
June 27, 2013